**UNITED STATES of America,**

v.

**Lawyer Lee WALKER, Defendant.**

**No. 4:CR–97–0012.**

United States District Court, M.D. Pennsylvania.

Dec. 29, 1998.

tific context remains in dispute." *Lauria v. National Railroad,* 145 F.3d 593, 599 n. 7 (3d Cir. 1998).

Frederick E. Martin, Assistant United States Attorney, Williamsport, PA, for government.

Stephen E. Becker, Lewisburg, PA, for defendant.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On January 15, 1997, a grand jury sitting in the Middle District of Pennsylvania re-turned a two-count indictment charging defendant Lawyer Lee Walker with assaulting a federal employee with a dangerous weapon (Count One) and assault on a federal employee (Count Two). Walker was an inmate at the United States Penitentiary at Lewisburg, Union County, Pennsylvania, at the time of the incident. On March 26, 1997, Walker entered a plea of guilty to a two-count superseding information which charged possession of a prohibited object (Count One) and assault on a federal employee (Count Two). He was sentenced on June 24, 1997, to a period of incarceration of 77 months. In determining that sentence, the court applied a 3–level enhancement to Walker's offense level under U.S.S.G. § 3A1.2(b).

The Court of Appeals for the Third Circuit reversed and remanded for resentencing because the record did not support a factual finding that Walker's victim was a "corrections officer" under the Guidelines. *United States v. Walker,* 149 F.3d 238 (3d Cir.1998). A hearing was held on December 9, 1998, and sentencing has been deferred pending issuance of a memorandum setting forth findings of fact and conclusions of law arising from that hearing. Proposed findings of fact have been submitted by the parties, and the matter is ripe for resolution.

### DISCUSSION:

#### I. INITIAL SENTENCING AND OPINION OF THIRD CIRCUIT

On July 30, 1996, Walker was an inmate at USP–Lewisburg assigned to work on the food service detail. At about 10:30 a.m. on that date, Walker was informed by Donald Reed, the Food Service Supervisor, that Walker's immediate supervisor, David Wadeck, had complained about Walker's performance and that he (Walker) would no longer be employed in his position. Wadeck's job title was, and is, Cook Supervisor.

At about 11:45 a.m., Wadeck was retrieving meal trays to send to the segregation unit when he felt something hit him from behind. He had been struck by Walker, who used a steel food service ladle or paddle in the attack. When Walker attempted to

strike Wadeck again, Wadeck was able to grab the paddle, and a struggle ensued. During the struggle, Walker kicked Wadeck several times in the head and ribs. Wadeck was able to reach up and pull down Walker's pants, at which time Walker's attack ended and he left the area. Wadeck summoned assistance from other correctional staff, and Walker was found in the inmate dining area and taken to the Lieutenant's office. Wadeck suffered lacerations to his left hand and his head.

Walker was charged with the assault and pled guilty. At sentencing, we found that the attack was provoked by Wadeck's use of the word "punk"[1] in addressing Walker, and not due to Wadeck's status as a government employee. However, we found that Wadeck was a "corrections officer" and that Walker's attack created a substantial risk of serious bodily injury. We therefore enhanced the offense level under the Sentencing Guidelines by 3 levels.

The applicable provision reads:

If—

. . .

(b) during the course of the offense or the immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement *or corrections officer*, assaulted such officer in a manner creating a substantial risk of serious bodily injury,

increase by 3 levels.

U.S.S.G. § 3A1.2(b) (emphasis added).

The Third Circuit reversed, holding that there was insufficient evidence on the record to support a finding that Wadeck was acting as a corrections officer at the time of the assault. *Cf. United States v. Hillstrom*, 988

F.2d 448 (3d Cir.1993) (record insufficient to support finding that federal prison camp and community corrections centers were not "similar" facilities under U.S.S.G. § 2P1.1(b)(3)).[2] It remanded, directing that we hold a hearing, as we deemed appropriate, to determine whether Wadeck was a corrections officer as defined for purposes of § 3A1.2(b). That definition, as determined by the Third Circuit is:

> any person so titled, any person, however titled, who spends significant time guarding prisoners within a jail or correctional institution, or in transit to or from or within a jail or correctional institution, and all other persons assaulted while actually engaged in guarding prisoners.

149 F.3d at 242.

We turn to the question of whether a Cook Supervisor at USP–Lewisburg is a "corrections officer" for purposes of § 3A1.2(b).

## II. FINDINGS OF FACT

1. David M. Wadeck is employed as a Cook Supervisor at USP–Lewisburg.

2. After being hired about 9 years ago, Wadeck worked as a Corrections Officer[3] for about 10 months.

3. Wadeck's training for the position of Corrections Officer included the standard course at the BOP facility in Glynco, Georgia.

4. Wadeck took special training for the position of Cook Supervisor at BOP facilities in Forth Worth, Texas, and Denver, Colorado.

5. The training for the position of Cook Supervisor included training in security.

6. "Security" for purposes of the position of Cook Supervisor includes:

(a) ensuring that all inmates assigned to work in the kitchen area at USP–Lewis-

---

**1.** In previous cases, the undersigned judge has learned that "punk" in penitentiary parlance refers to the subservient or recessive role in a homosexual relationship. The term is extremely offensive.

**2.** *But see United States v. Hillstrom*, 837 F.Supp. 1324 (M.D.Pa.1993) (20–page opinion, including 182 findings of fact, to reach same conclusion), *aff'd*, 37 F.3d 1490 (3d Cir.1994) (table), *cert.*

*denied*, 514 U.S. 1028, 115 S.Ct. 1382, 131 L.Ed.2d 236 (1995); *United States v. Cisneros–Garcia*, 14 F.3d 41 (10th Cir.1994) (pointing to latter opinion and noting, "For good reason, district courts in this circuit are not required to engage in this exercise.").

**3.** When capitalized, the term "Corrections Officer" refers to those persons so titled.

burg are at their assigned stations during working hours; [4]

(b) tracking implements, such as knives, which may be used as weapons;

(c) ensuring that all "confined items," or foods that may be used to ferment alcohol or the use of which must otherwise be controlled, are not removed from the kitchen area;

(d) responding to emergencies; [5] and

(e) writing reports which may lead to the imposition of discipline on inmates.

7. Like Corrections Officers, Wadeck receives hazardous duty pay.

8. A Cook Supervisor does not actually prepare food except in "lock-down" situations.

9. A Cook Supervisor is charged with supervising inmates who are employees in the kitchen area of USP–Lewisburg, and does not supervise other BOP employees.

10. The "kitchen area" at USP–Lewisburg includes the kitchen, storeroom, freezer, bakery, staff dining room, and main inmate dining hall (known as "main line").

11. Approximately 194 inmates are supervised by Food Service Department employees within USP–Lewisburg.

12. The head of the Food Service Department is the Food Service Administrator, who has three Assistant Food Service Administrators, and these in turn supervise 22 Cook Supervisors.

13. Between 11:00 p.m. and 7:00 a.m., there is only one Cook Supervisor on duty to supervise 16 inmates without any other BOP employees, including Corrections Officers, present in the kitchen area.

14. Cook Supervisors generally supervise 10–15 inmates at a time, although a shift may have as many as 65 inmates supervised by multiple Cook Supervisors.

15. During meals, staff from various departments within USP–Lewisburg "stand on main line," meaning that they gather in the dining hall for the purpose of security and to make themselves available to inmates with problems or complaints.

16. While Corrections Officers stand main line, they are not stationed in any other part of the kitchen area either during meals or between meals, and security is left to the Food Service Department.

17. A Cook Supervisor receives early retirement benefits from the BOP as a "law enforcement officer," the position having been certified as such. A "law enforcement officer" for these purposes:

... means an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, including an employee engaged in this activity who is transferred to a supervisory or administrative position. For the purpose of this paragraph, "detention" includes the duties of—

(A) employees of the Bureau of Prisons and Federal Prison Industries, Incorporated;

...

whose duties in connection with individuals in detention suspected or convicted of offenses against the criminal laws of the United States or of the District of Columbia or offenses against the punitive articles of the Uniformed [sic] Code of Military Justice (chapter 47 of title 10) require frequent (as determined by the appropriate administrative authority with the concurrence of the Office) direct contact with these individuals in their detention, direction, supervision, inspection, training, employment, care, transportation, or rehabilitation;

---

**4.** Cook Supervisors also do "counts," or checks that the proper number of inmates is present during a shift. The only time they are assisted by Corrections Officers is on the 11:00 p.m. to 7:00 a.m. shift, when only one Cook Supervisor is present. Two BOP employees are required to perform a count.

**5.** Wadeck's position description points out that he "must maintain proficiency in self defense, firearms, and legal statutes involved in correctional management." Government Exhibit RS–3 at 1.

. . .

5 U.S.C. § 8331(20).[6]

18. Wadeck in the past has responded to emergencies within USP–Lewisburg and has summoned assistance on at least one occasion when two inmates began fighting; Wadeck broke up the fight along with other staff.

19. Wadeck has prepared reports which have led to the imposition of discipline.

20. Wadeck has found contraband in the kitchen area, including knives and confined items.

21. As a Cook Supervisor, Wadeck is certified annually in firearms and self-defense, and receives other annual "refresher" training in security.

22. As a Cook Supervisor, Wadeck is authorized to pursue, arrest, and detain an escapee from the institution.

23. As a Cook Supervisor, Wadeck is authorized to write up as "out of bounds" any inmate who is not at his assigned work area, and must contact the Lieutenant if the inmate is not located.

24. At the end of a shift, as a Cook Supervisor, Wadeck is required to "secure" the kitchen area, meaning that he must check to ensure that doors and grilles are locked, as necessary.

25. Most USP–Lewisburg employees who spend most of the day supervising inmates wear a nylon "duty belt," which has attachments to hold a radio, keys, and other equipment for that purpose.

26. Wadeck wears a duty belt while on duty at USP–Lewisburg.

27. Wadeck does not have the job title of Corrections Officer.

28. Wadeck has worked overtime as a Corrections Officer assigned to the blocks, towers, etc.

29. The Office of Personnel Management allows all employees at USP–Lewisburg an extra pay grade due to the nature of the work force supervised and their exposure to potentially dangerous situations.

30. USP–Lewisburg is a correctional institution.

### III. CONCLUSIONS OF LAW

■ 1. Under U.S.S.G. § 3A1.2(b), a 3–point enhancement to a defendant's offense level is warranted if the victim of an assault is a corrections officer.

■ 2. A corrections officer for such purposes is any person so titled; any person, however titled, who spends significant time guarding prisoners within a jail or correctional institution or in transit to or from or within a jail or correctional institution; and all other persons assaulted while actually engaged in guarding prisoners.

3. Wadeck is not so titled.

4. Wadeck routinely supervises inmates during their employment, is responsible for ensuring that they are present during working hours, and is responsible for safety, security and discipline of inmates under his supervision.

5. Wadeck spends significant time guarding prisoners within a correctional institution.

6. Wadeck was assaulted by Walker while actually engaged in guarding prisoners.

7. A 3–point enhancement to Walker's offense level is warranted under § 3A1.2(b).

### IV. WADECK'S STATUS

The focus of the definition provided by the Third Circuit, as applicable in this instance, is that the BOP employee must be a "guard" or be "guarding" inmates before he or she may be considered a "corrections officer" for purposes of § 3A1.2(b). Of course, the term "prison guard" conjures images of a uniformed man in a tower with a long-range rifle or a roughneck with a shotgun standing over a chain-gang. In contemporary prisons, these images have been modified slightly.

---

6. Questioning of Wadeck on this provision during the sentencing hearing was very misleading. Defense counsel had Wadeck read the definition and together they concluded that any BOP employee was a "law enforcement officer" under this provision. The problem is that counsel neglected to have Wadeck read the last part of the definition, that beginning with "whose duties in connection with..." That part of the definition alters the context, and the definition, completely.

Prisons now have case managers and counselors, staff attorneys, education specialists, etc., all of whom perform functions other than simply standing watch but who are nevertheless responsible for safety and security within the institution. It can hardly be said, then, that Corrections Officers are the only corrections officers within an institution.

Regardless, it appears that a Cook Supervisor's duties plainly falls within even a restrictive definition of "guard": "**guard**... 2. to keep under close watch in order to prevent escape, misconduct, etc.: *to guard a prisoner....*" The Random House Dictionary of the English Language 847 (2d ed.1987).

We also note that the evidence demonstrated that Wadeck performs many of the functions recited by the Third Circuit as being within the duties of a corrections officer, which includes an elaboration of "guards." 149 F.3d at 242 (quoting 1 U.S. Dept. of Labor, *Dictionary of Occupational Titles* 268 (4th ed. rev.1991)). In particular, Wadeck:

> Observes conduct and behavior of inmates to prevent disturbances and escapes. Inspects locks, window bars, grills, [and] doors ... for tampering. Searches inmates ... for contraband articles. Guards and directs inmates during work assignments. Patrols assigned areas for evidence of forbidden activities, infraction of rules, and unsatisfactory attitude or adjustment of prisoners. Reports observations to superior. Employs weapons or force to maintain discipline and order among prisoners, if necessary.... May prepare written report concerning incidences of inmate disturbances or injuries.

*Id.* Each of these activities was supported by evidence adduced at the hearing, and by the findings of fact recited above.

## V. CONCLUSION

Having conducted the evidentiary hearing required by the Third Circuit, we again conclude that § 3A1.2(b) applies and that a 3–point enhancement to Walker's offense level is warranted for the assault on Wadeck, a corrections officer under that section.

An order scheduling the imposition of sentence will issue.