

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-20-2000

# United States v Walker

Precedential or Non-Precedential:

Docket 99-3071

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation
"United States v Walker" (2000). *2000 Decisions.* Paper 11.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/11

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 20, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-3071

UNITED STATES OF AMERICA

v.

LAWYER LEE WALKER,
Appellant

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Crim. No. 97-cr-00012)
District Judge: Honorable James F. McClure, Jr.

Argued: September 23, 1999

Before: BECKER, Chief Judge, GARTH, Circuit Judge, and
POLLAK, District Judge.*

(Filed January 20, 2000)

        STEPHEN F. BECKER, ESQUIRE
          (ARGUED)
        Shapiro & Becker
        114 Market Street
        Lewisburg, PA 17837

Counsel for Appellant

_____

* Honorable Louis H. Pollak, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.


        DAVID M. BARASCH, ESQUIRE
        United States Attorney
        FREDERICK E. MARTIN, ESQUIRE
          (ARGUED)
        Assistant United States Attorney
        Herman T. Schneebeli Building
        240 West Third Street
        P.O. Box 548
        Williamsport, PA 17703-0548

        Counsel for Appellee

OPINION OF THE COURT

BECKER, Chief Judge.

In this second appeal of a federal sentence arising out of a prisoner's assault on a prison employee, we must again consider whether a prison cook supervisor is a "corrections officer" for purposes of a three-level "Official Victim" enhancement under United States Sentencing Guidelines S 3A1.2(b). For the defendant, the consequences of such an enhancement are great, and hence (as is always the case) we treat the legal issues raised by this matter with seriousness. That said, we do not denigrate this appeal by observing that the public might well wonder whether federal judges do not have more important things to do than to write the eighteen page opinion necessary to decide this essentially pedestrian question. If Congress would amend the Sentencing Guidelines Enabling Act, 28 U.S.C.S 994 et seq., so as to enable the Sentencing Commission to afford federal judges additional sentencing discretion, such efforts could be avoided. If it does not, we can look forward to decades more in which the dockets of the federal courts will be glutted with such esoteric exercises, the energies of district court and appellate judges sapped, and the Federal Reporters filled with one tome after another on issues as banal as whether a cook supervisor is a corrections officer.1

_____

1. A rough survey, based on a Westlaw search, suggests that in the last twelve months 2053 opinions of the Courts of Appeals have involved

The subject of this opinion is the Defendant, Lawyer Lee Walker. Walker is a federal inmate who worked in the kitchen at the United States Penitentiary at Lewisburg, Pennsylvania (USP–Lewisburg), and who, soon after he was notified that he would be transferred from that job, assaulted his former boss David Wadeck, a prison cook supervisor. In the case at the bar, we must determine whether Wadeck was a corrections officer and whether Walker knew or had reasonable cause to believe that Wadeck was a corrections officer, such that a three-level sentence enhancement under S 3A1.2(b) was appropriate. The panel hearing Walker's first appeal defined the term "corrections officer" for us and did so narrowly. The prior panel focused on whether the victim was titled a corrections officer, whether he spent a significant amount of time guarding prisoners, and whether he was guarding prisoners at the time he was assaulted. See United States v. Walker, 149 F.3d 238, 242 (3d Cir. 1998). The District Court resentencing Walker applied this definition and found the Official Victim enhancement appropriate.

Although, with the benefit of hindsight, one could argue that the prior panel's definition of the term corrections officer is unduly narrow, we are, needless to say, bound by it. Accordingly, our task is limited to assessing whether the District Court resentencing Walker applied that definition correctly. Because we find that Wadeck was not titled a corrections officer, and that the record does not support

_____

sentencing guidelines issues. It would not be necessary to eliminate the sentencing guidelines to alleviate this problem. Widening the allowable guideline ranges might make it possible to reduce the Internal Revenue Code-like network of enhancements and adjustments. See Suggestions for the Sentencing Commission, 8 Fed. Sentencing Rep. 10, 11 (July/August 1995). The Commission would also be well served to pay better attention to the way courts apply the guidelines and to responding to courts' (and others') frustrations with the guidelines' overly mechanical characteristics. See Daniel J. Freed, Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers, 101 Yale L.J. 1681, 1750-51 (1992). For an incisive criticism of the guidelines scheme, in general, and suggestions for reform, see generally Kate Stith & Jose Cabranes, Fear of Judging: Sentencing Guidelines in Federal Courts (1998).

either the conclusion that Wadeck spent significant time guarding prisoners or that he was engaged in the act of guarding prisoners when he was struck by Walker, we hold that the District Court erred as a matter of law in enhancing Walker's sentence. That said, because a broader definition of corrections officer seems to us to be more consonant with the purpose of the "Official Victim" enhancement, we urge the Sentencing Commission to revisit S 3A1.2(b) and the application notes accompanying it, thereby obviating the uncertainty that led to the prior panel's rendering.

I.

Lawyer Lee Walker worked on a food service detail at USP-Lewisburg. The penitentiary employed Wadeck as a cook supervisor. Wadeck served as Walker's immediate supervisor. See infra Subsections II.A.1-3 (describing what these supervisory duties entailed). One day during work, Donald Reed, the Food Services Supervisor in charge of the kitchen, informed Walker that Wadeck found Walker's work substandard and that Walker would be transferred to another job position. After Walker's meeting with Reed, Wadeck "provoked" Walker by calling him a"punk," which is an extremely offensive term to prisoners at USP-Lewisburg. United States v. Walker, 30 F. Supp. 2d 829,

831 & n.1 (M.D. Pa. 1998). Incensed, Walker waited approximately an hour and then, while Wadeck prepared food trays for inmates in the segregation unit, attacked Wadeck by striking him from behind with a steel ladle or paddle. A struggle ensued during which Walker kicked Wadeck several times. Wadeck fended off Walker by pulling down Walker's pants. Other correctional staff summoned by Wadeck detained Walker.

Walker pled guilty to possession of a prohibited object by an inmate, 18 U.S.C. S 1791, and impeding a federal officer, 19 U.S.C. S 111. The District Court sentenced Walker to 77 months incarceration, applying a three-level enhancement to Walker's offense level under U.S.S.G. S 3A1.2(b). Section 3A1.2, entitled "Official Victim" provides that

4

> [i]f--
>
> . . .
>
> (b) during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury,
>
> increase by 3 levels.

U.S.S.G. S 3A1.2(b) (bold in original).

Walker appealed the enhancement. The prior panel concluded that, in applying S 3A1.2(b), the District Court impermissibly lumped " `all prison employees, who work in facilities and frequently interact with inmates' " into the smaller subset of individuals referred to as corrections officers in S 3A1.2(b). Walker, 149 F.3d at 241 (quoting the District Court).2 The panel held that, for purposes of S 3A1.2(b), a " `corrections officer' . . . is a person distinct from other prison employees." Id. at 242. According to the panel, a corrections officer is defined as "[1] any person so titled, [2] any person, however titled, who spends significant time guarding prisoners within a jail or correctional institution or in transit to or from or within a jail or correctional institution, and [3] all other persons assaulted while actually engaged in guarding prisoners." Id. Because

_____

2. The panel held that the term "corrections officer" referred to a class

of individuals distinct from all federal employees at the prison because the enhancement provision in S 3A1.2(a) had been amended in 1992 to include all "government officer[s] or employee[s]," while S 3A1.2(b) was left to include only corrections officers. Walker, 149 F.3d at 241. If government officers or employees were not distinct from "corrections officer," the panel reasoned, the 1992 amendment would be superfluous. See id. The panel found support for this reasoning in other statutory and regulatory provisions distinguishing between government employees and corrections officers. See id. at 241–42. It also concluded that the plain meaning of the term "corrections officer" was inconsistent with the plain meaning of the word "employee." See id. at 242.

the panel found no evidence that Wadeck fit into any one of these three criteria, it reversed and remanded for resentencing, suggesting that the District Court conduct further fact-finding to see whether Wadeck qualified as a corrections officer under S 3A1.2(b) and the panel's definition of that term. See id. at 243.

On resentencing, the District Court engaged in the suggested fact-finding and made several conclusions of law based on the panel's three-part, disjunctive test for determining whether Wadeck was a corrections officer. The Court first found that Wadeck's job title was not "corrections officer," but instead "cook supervisor." Accordingly, he did not meet the first criterion of the test. The Court next found that "Wadeck routinely supervises inmates during their employment, is responsible for ensuring that they are present during working hours, and is responsible for safety, security and discipline of inmates under his supervision." Walker, 30 F. Supp. 2d at 833. The Court therefore held that "Wadeck spends significant time guarding prisoners within a correctional institution," and that he was "assaulted by Walker while actually engaged in guarding prisoners." Id. Concluding that the prior panel's second and third criteria for qualifying as a corrections officer were met, the Court added a three-point enhancement to Walker's offense level pursuant to S 3A1.2(b). The District Court made no explicit findings regarding the mens rea component of the guideline. See infra note 11 (discussing the mens rea issue).3

II.

The first issue before us is whether Wadeck was a corrections officer, as the prior panel defined that term. Specifically, we must decide whether the District Court's factual findings and the record at the resentencing hearing warranted finding that a cook supervisor such as Wadeck spent a significant amount of time guarding prisoners or

_____

3. The District Court properly exercised jurisdiction over the matter under 18 U.S.C. S 1321. We exercise appellate jurisdiction over the final judgment of the District Court under 28 U.S.C. S 1291 and 18 U.S.C. S 3742(e)(1).

that Wadeck was engaged in the act of guarding prisoners at the time Walker attacked him.4 We review de novo the District Court's legal conclusions that both of these questions should be answered in the affirmative. See United States v. Bennett, 161 F.3d 171, 190 (3d Cir. 1998) (noting that in a federal sentencing appeal " `the District Court's findings of facts are measured by the clearly erroneous test, but our review of the legal component of its conclusions is plenary' ") (citations omitted).

A.

We turn our attention first to whether Wadeck spent a significant amount of time guarding prisoners. The prior panel did not elaborate on what guarding prisoners means or what it understood a significant amount of time to be, but it did provide us with certain outer boundaries. The panel went to great pains to point out that not all prison employees are corrections officers, and that corrections officers are a distinct subset of the federal prison employee population. See Walker, 149 F.3d at 241–43. 5 Therefore, we know that any interpretation of "spends a significant

_____

4. The District Court found as a matter of fact that Wadeck's job title was not "corrections officer." See Walker, 30 F. Supp. 2d at 833. Neither party contests this finding of fact or the legal conclusion that arises therefrom; i.e., that Wadeck's job title, by itself, did not place him in the
class of individuals protected by S 3A1.2(b)'s Official Victim enhancement. We will not disturb the District Court's finding of fact on this matter, which we review for clear error, see United States v. Bennett,

161 F.3d 171, 190 (3d Cir. 1998), nor we will revisit the legal conclusion that the finding compelled.

5. Examples of the panel's repeated efforts to make this point include statements that: (1) The "conclusion that `all prison employees, who work in facilities and frequently interact with inmates, fall within the protection of 3A1.2(b),' is supported neither by citations to the record nor
by legal authority." Walker, 149 F.3d at 241; (2) "We are convinced that a `corrections officer,' as referenced in section 3A1.2(b), is a person

distinct from other prison employees." Id. at 242; and (3) " `If corrections
officer' is to have meaning apart from `government employee,' and we
conclude that it must, then Wadeck is not a corrections officer according
to this record." Id. at 242-43 (emphasis added). The dissent seems to
ignore this distinction.

amount of time guarding prisoners" that sweeps too many
individuals employed at a prison into its web is too broad.
We also know that any interpretation that limits thefield to
corrections officers so titled is too narrow.

Beginning with these two outer boundaries, we turn to
the common meanings of the word "guard" and the phrase
"spends a significant amount of time."6 Webster's defines
the verb "to guard" as "to protect from danger," "to
accompany for protection," and to watch over so as to
prevent escape . . . or restrain from violence or
indiscretion." WEBSTER'S THIRD NEW INT'L DICTIONARY
UNABRIDGED 1007 (1966). Additionally, Webster's defines the
adjective "significant" as "deserving to be considered:
IMPORTANT, WEIGHTY, NOTABLE." Id. at 2116. Referencing
Webster's sensible common usage, if Wadeck, the cook
supervisor, is to be a corrections officer for purposes of the
guideline in question, an important, weighty, or notable
part of his time working at ESP-Lewisburg must be spent
protecting people from danger, accompanying them for
protection, watching over prisoners so as to prevent their
escape, and/or restraining them from violence or
indiscretion. Under the prior panel's teaching, cook
supervisors must spend more time engaged in these
activities than prison employees generally, but need not
spend as much time doing these things as corrections
officers so titled.

With this understanding of the prior panel's second

_____

6. The government would have us use the Department of Labor's and the
Office of Management and Budget's definitions of the term "corrections
officer" and the several factors contained therein, to determine whether
Wadeck was a corrections officer for purposes of the sentencing
guidelines. Although the prior panel relied on these definitions to
dismiss

the government's previous claim that all prison employees were
corrections officers, see Walker, 149 F.3d at 241-42 (quoting 1 U.S.
Dep't of Labor, Dictionary of Occupational Titles 268 (4th ed. rev. 1991);
Office of Management and Budget's Proposed 1997 Standard
Occupational Classification Manual (visited July 1, 1998)
http://stats.bls.gov/soc/soc/_5360.htm>), the panel crafted its own

definition of the term corrections officer. It is that definition, as the law
of the circuit and of this case, that controls on this appeal, not that of
the Department of Labor or the Office of Management and Budget.

criterion for a S 3A1.2(b) enhancement in mind, we turn our
attention to Wadeck's and cook supervisors' various duties
at USP Lewisburg. We address a cook supervisors' general,
primary, and security duties in turn, deciding whether
viewed alone or in concert they place Wadeck and other
cook supervisors within the scope of the class protected by
S 3A1.2(b)'s Official Victim enhancement.

1. Wadeck's (and USP-Lewisburg Cook Supervisors')
        General Duties

Many of the characteristics of Wadeck's job that the
District Court relied upon at the resentencing hearing to
enhance Walker's sentence do nothing to distinguish
Wadeck, or cook supervisors generally, from all other
employees at USP-Lewisburg. The Court found many facts
relevant to Wadeck's training, clothing, salary, and
authority to discipline and detain prisoners, but failed to
consider whether these facts mean that he engages in
guarding as compared to other employees. We conclude
that they do not.

Wadeck received initial correctional techniques training
when he was hired, and a refresher training in security
once a year; he was required to maintain proficiency in self-
defense techniques, firearms, and legal statutes involved in
correctional management; he was titled a law enforcement
officer and accordingly received hazard pay and enhanced
pension benefits because he worked in close proximity to
prison inmates; and he had the authority and responsibility
to arrest and detain prisoners and respond to emergency
situations. As the testimony of those employed at USP-
Lewisburg and documentary evidence admitted at the
resentencing hearing shows, however, every employee at
USP-Lewisburg received such benefits and training, had
such authority and responsibilities, and was titled a law
enforcement officer in order to receive enhanced pay and
benefits.7

_____

7. In concluding that Wadeck guarded prisoners, the District Court also
relied on the fact that Wadeck wore a nylon belt on which he kept keys,
a radio with which he could communicate with his supervisors or call in
assistance, and chits that could be traded in for other equipment. Again,
many prison employees wore such a belt--some of whom were not
responsible for guarding prisoners--while others did not--some of whom

were in fact in charge of guarding prisoners. Wadeck's belt, therefore, does not tighten the argument that he guarded prisoners.

Because these general duties and job characteristics were common to all employees at USP-Lewisburg--from corrections officers to cook supervisors to chaplains and secretaries--none of these facts place Wadeck, or USP-Lewisburg cook supervisors generally, into the subclass of prison employees that the prior panel was willing to recognize as Official Victims under S 3A1.2(b). If these duties and characteristics were to qualify individuals as Official Victims, the prior panel's decision would be meaningless, because all USP-Lewisburg prison employees would be protected by S 3A1.2(b). This is a conclusion the prior panel explicitly and repeatedly rejected. See Walker, 149 F.3d at 241-43; see also supra note 5 (enumerating instances in which the panel rejected the conclusion that all prison employees qualified as corrections officers under the Official Victim enhancement).

2. Wadeck's (and USP-Lewisburg Cook Supervisors')
      Primary Duties

Similarly, Wadeck's primary duties as a cook supervisor do not place him within the guideline's protected class, as the prior panel defined the contours of that class. Wadeck is charged with supervising inmates who are employees in the kitchen area at USP-Lewisburg. As a cook supervisor, his "[p]rimary duties" are to supervise and instruct "inmate workers in all phases of preparation, presentation and timeliness of all food items that are placed on the serving line" and to supervise "inmates in the serving of all meals, and the sanitation of the department." Position Description, Cook Supervisor, Appendix at 119.

To meet these obligations, a cook supervisor such as Wadeck receives specialized training in food preparation; he trains inmate workers in the art of prison cooking; he acquaints them with overall operation of the kitchen; he staffs the kitchen and orders equipment and supplies; he sets the inmate workers' schedules and sets priorities to meet feeding demands and deadlines; he makes sure the inmate-employees prepare nutritious and attractive meals in a timely and presentable manner; he evaluates his inmate employees' performance, reprimanding them or recommending that they receive service awards; he pays the inmate workers their salaries; he counsels and motivates

unwilling or potentially dangerous workers and considers security and safety of other when assigning work; and in lock-down situations, when inmates are confined to their cells, he prepares food. Because the "consequences of a failed meal could be disastrous," the cook supervisor "must maintain constant vigilance of inmate workers." Id. at 121.

In our view, none of these supervisory duties connote "guarding" as the term is normally employed. In contrast, we see them as more akin to any manager in a kitchen in a restaurant or college cafeteria. In fact, Wadeck's supervisor in the food services department described the trade-type cook supervisor as one who receives additional pay only because he is in frequent contact with inmates. This is true, however, of every prison employee, save for those who are actually charged to go extra lengths to receive their hazard pay.

The government objects to this characterization of Wadeck's supervisory duties. It contends in its brief, and asserted even more explicitly at oral argument, that any time a prison employee at USP-Lewisburg--be it a secretary, nurse, cook supervisor, or chaplain--is alone with an inmate or supervising an inmate, the employee is guarding the inmate. Accordingly, submits the government, a cook supervisor, who is often alone with inmates as they bake and cook, spends a significant amount of time guarding prisoners.

We find this argument--and its conflation of the acts of supervising and guarding--unconvincing. As Wadeck's testimony at the sentencing hearing established, a cook supervisor such as Wadeck performs his multiple supervisory tasks in many different parts of the kitchen area and dining halls adjoining it. Instead of spending a significant amount of time protecting inmates from danger, accompanying them for protection, watching over them so as to prevent escape, or restraining them from violence or indiscretion--as guarding is commonly defined--Wadeck moves throughout the prison and in and out of contact with different prisoners. This contact mainly consists of making sure food is prepared and served properly and in a timely manner. To that end, Wadeck spends some of his time by the freezers supervising the preparation of common fare

11

trays and cold trays. He then moves to the main kitchen to supervise the preparation of other trays for distribution in the main line of the dining hall.

Wadeck also works in the bakery, the storeroom, the kitchen, the dining hall, the staff dining room, and in front

of the main kitchen on the serving line. When he is in the kitchen with inmates, he is either alone with ten tofifteen inmates or with another cook supervisor and as many as sixty-five inmates, depending on the shift. Whether he is in the kitchen supervising the inmates or away from the kitchen leaving the inmates to themselves, the doors to the kitchen always remain locked. This movement from station to station and task to task is not the work load of someone watching over prisoners to prevent violence, escape, and indiscretion; again, it seems to be the schedule of a busy manager of a large restaurant or cafeteria. While cook supervisors monitor the preparation and delivery of food, the locks on the kitchen doors and the attractiveness of a kitchen job to inmates, as well as the corrections officers, so titled, who are posted throughout the prison, perform the safeguarding functions the government attributes to all prison employees.

If we were to accept the government's argument that any time a prison employee was alone with prisoner, he would be guarding that prisoner, we would run afoul of the prior panel's decision. Put simply, the government's argument proves too much. The argument sweeps spiritual advisors who spend time alone with penitents, librarians and job counselors, secretaries who work in the same offices as prisoners, and countless other prison employees into the class of people who spend a significant amount of time "guarding" prisoners. Modern prisons are huge institutions, with large numbers of employees performing a host of job descriptions. By equating supervision of job tasks or time spent alone with prisoners with the act of guarding, the government and the District Court bring us back to the first time this Court heard Walker's appeal, where the government had argued, and the District Court had found, that all prison employees were corrections officers. This, we now know, is not the case.

12

In excepting chaplains, secretaries, and cook supervisors from the class of people who spend a significant amount of time guarding, we do not slice the prior panel's decision too thinly. As Robby Wilson, a special investigative agent at USP-Lewisburg testified, there were several groups of employees at the prison, not titled corrections officers, whose jobs seem to us to consist primarily, or at least significantly, of guarding. There are lieutenants posted throughout the prison who instruct individuals to conduct shakedowns;8 security officers, locksmith officers, and armory officers who insure the integrity of locks and the building; and senior officers, senior officer specialists, special investigative agents, and correctional counselors, all of whom spend most of their time doing the work of

correctional officers, even though not titled as such. It is these individuals who appear to fall under the prior panel's definition of the set of individuals whose job title is not corrections officer, but who spend a significant amount of their time guarding prisoners.

In contrast, a cook supervisor is concerned with food preparation, and a prison chaplain with spiritual guidance. Consistent with his duties, a cook supervisor reports to the food services administrator. And consistent with their guarding duties, the employees described in the preceding paragraph report to a captain and an associate warden who is in charge of custody. Even though a chaplain or cook supervisor may be alone with prisoners as they perform their duties, in our view, they cannot be seen as guarding prisoners in the way that the aforementioned corrections officers, and their counterparts do. Their primary duties and responsibilities are simply different in kind.

### 3. Wadeck's (and USP-Lewisburg Cook Supervisors') Security Obligations

A cook supervisor has certain security obligations specific to his station that come closer to the act of guarding than do his general and primary duties, but not close enough to qualify him as a corrections officer, as the prior panel defined the term. According to the District Court's findings

_____

8. According to Wadeck's testimony, "prison foremen" conduct shakedowns in the kitchen area.

13

of fact, a cook supervisor must (1) ensure that all inmates assigned to work in the kitchen were at their assigned station during working hours; (2) track implements such as knives, which may be used as weapons; (3) ensure that all confined items, such as foods that may be used to ferment alcohol, are not removed from the kitchen area; (4) respond to emergencies; (5) write reports that may lead to the discipline of inmates; and (6) join the staff from other departments (including staff members titled corrections officers) and gather in the dining hall for purposes of security and to make themselves available to inmates with problems or complaints.

As mentioned above, the fourth, fifth, and sixth of these duties are shared by almost everyone at the prison. Every prison employee must respond to inmate fights or emergencies, every employee can write up an inmate, and most employees gather in the dining hall to supervise meals. As Wadeck testified, the write-ups he issues relate to

employer-employee problems, such as tardiness, insolence toward staff, sanitation, and failure to wear safety shoes. During meals in the dining hall, he is more concerned with the delivery of food to inmates on the serving line. These three security duties, therefore, do not demonstrate that Wadeck spends a significant amount of time guarding prisoners.

The cook supervisor's second and third security duties, monitoring the theft of implements that could be used to make weapons and food supplies with which the prisoners can make alcohol, may have special importance in a prison,[9] but they are comparable to the duty to prevent theft that the manager of any restaurant, navy mess hall, or college cafeteria would have. Wadeck spends twenty minutes each day filling out log sheets, noting that he checked to make sure that all of the kitchen's grills, locks, and bars are secured, and that all of the knives and potentially dangerous tools that were dispensed are returned. This clerical monitoring is supplemented by shake-downs of

_____

9. To that end, Wadeck received special training aimed at familiarizing him with the types of objects that prisoners could use to make weapons and alcohol.

14

prisoners and kitchen areas, performed not by cooks supervisors, such as Wadeck, but by prison employees titled cook foremen. The cook supervisor job description also charges Wadeck with maintaining the accountability of inmates at all times and preventing passage of illegal drugs and weapons.

Nothing about these supervisory duties, however, elevates Wadeck's duties to guarding. Although the government and the District Court frequently equate supervision with guarding, this conflation of terms is not enough to support the legal conclusion that Wadeck spent a significant amount of time guarding prisoners. It is not surprising that in a prison, where security is of paramount importance to every employee, each employee would have some supervisory obligations directed toward effecting that primary end. This general responsibility, divided among the USP-Lewisburg staff as specific tasks, cannot, however, be used to bootstrap Wadeck into Official Victim status for sentencing guidelines purposes.

That leaves the first security duty--ensuring that inmates assigned to work in the kitchen are at their assigned station during working hours--as a ground upon which to find a S3A1.2(b) enhancement under the prior panel's

second criterion. Cook supervisors, with and without the assistance of corrections officers, perform three"counts" during each shift on which they work to insure that each inmate is present. This duty, making sure that each inmate is at his station, serves two purposes. First, food does not get served if an inmate fails to report to his position and stay working there diligently. Second, the fact that a prisoner is not at his station could mean that he is attempting to escape. The first purpose is a concern of any kitchen manager and does not make the act of counting, guarding. Acting to effect the second purpose can constitute guarding, but there is no evidence in the sentencing hearing record establishing that cook supervisors at USP-Lewisburg spend a significant amount of time counting prisoners and preventing escape. These discrete acts of guarding, when understood in the context of Wadeck's other duties, are not enough to justify an Official Victim enhancement under the prior panel's definition.

15

Accordingly, for the reasons detailed in this Section, we conclude that the District Court erred as a matter of law in finding that Wadeck spent a significant amount of time guarding prisoners, as the prior panel defined that term. See Bennett, 161 F.3d at 190 (defining our plenary standard of review over the legal component of sentencing guideline issues).

B.

Having determined that Wadeck did not spend a significant amount of time guarding prisoners, we turn our attention to the prior panel's third criterion for applying S 3A1.2(b)--i.e., whether Wadeck was guarding prisoners at the time Walker assaulted him. The District Court held that "Wadeck was assaulted by Walker while actually engaged in guarding prisoners," but gave no explanation why this was the case. Walker, 30 F. Supp. 2d at 833. The only evidence of what Wadeck was doing at the time Walker struck him from behind is contained in Wadeck's testimony at the resentencing hearing. This testimony shows that when Walker surprised him Wadeck was not guarding anyone; instead it shows that Wadeck was, in essence, running an errand:

> Q: Mr. Wadeck what were you doing at the time Mr. Walker assaulted you?

> A: I was getting food trays to send down to segregation.

    Q: At that time were you supervising inmates?

    A: At that time when I walked back I was coming off
    the line during feeding, and I was supervising inmates
    that were--actually they were coming to eat, and I just
    had to run back and get some trays; there was nobody
    else back there at the time.

Appendix at 62-63 (testimony of Wadeck, being questioned
by government on direct examination) (emphasis added).

    Q: Now at the time Mr. Walker assaulted you, I
    believe that you said you were getting food trays and
    taking them to G block.

16

    A: Right, it was either G block or segregation that
    called.

    . . .

    Q: So were you actually carrying the trays up there?

    A: No, I wasn't, I was going back in the area where
    they prepare the trays. There was a hallway there with
    an opening in the door. I was standing in there
    informing the two individuals that were in there that I
    needed five more trays, and at that time I felt
    something on the back of my head.

Appendix at 77-78 (testimony of Wadeck, being questioned
by Walker on cross examination).

Not even an extremely generous reading of this testimony
supports the conclusion that when assaulted Wadeck was
engaged in the act of guarding as that term is defined
repeatedly above. Had Wadeck been performing a count,
breaking up an inmate fight, or working as a corrections
officer when assaulted,[10] we could reach the opposite
conclusion. On this record, however, we cannot. Wadeck
was performing the type of task that led us to conclude in
the last Section that he does not spend a significant
amount of time guarding prisoners, but rather spends his
time insuring that meals are prepared and served
effectively. Accordingly, we hold that the District Court
erred as a matter of law in relying on this third criterion of
the prior panel's disjunctive three-part test to enhance
Walker's sentence under S 3A1.2(b).

III.

Because we conclude that Wadeck was not titled a

corrections officer, that he did not spent significant time
guarding prisoners, and that he was not guarding Walker
at the time he was struck by Walker, we hold that the
District Court erroneously enhanced Walker's sentence

_____

10. Some cook supervisors work overtime as corrections officers. Wadeck
has done this type of work in the past, but the record does not indicate
how many hours he has worked as a corrections officer. At all events, he
was not working as a corrections officer when assaulted by Walker.

17

under S 3A1.2(b). We will, therefore, vacate the judgment of
the District Court and remand with instructions that
Walker be resentenced without an enhancement based on
the Official Victim guideline contained in S 3A1.2(b).11

_____

11. Although we need not reach the issue, we note the possibility that
Walker's sentence could also be vacated on the grounds that the District
Court did not make specific findings of fact or law with respect to
S 3A1.2(b)'s mens rea requirement. The guideline requires that the
defendant "know[ ] or hav[e] reasonable cause to believe that [the victim]
was a law enforcement or corrections officer . . .." U.S.S.G. S 3A1.2(b).
At his original sentencing hearing, Walker referred to Wadeck as a "cop,"
suggesting both that he knew or had reason to know that Wadeck was
a corrections officer as the prior panel defined that term, and that he
therefore harbored the requisite criminal intent when he assaulted
Wadeck. The prior panel mentioned this fact, but did not rule that this
statement disposed of the mens rea issue when remanding for
resentencing. See Walker, 149 F.3d at 242-43. In its resentencing
memorandum, the District Court did not refer to Walker's testimony, and
it made no factual or legal rulings regarding the intent element of
S 3A1.2(b). In their absence, we are deprived of factual or legal
conclusions to review on appeal.

18

GARTH, Circuit Judge, dissenting:

This appeal seeks an answer to the question -- when is
a prison Cook Supervisor not a prison Corrections Officer?
My answer to that question, in the present context, differs
dramatically from the majority's answer -- my answer is
never!

The majority's opinion holds that, pursuant to the
definition set forth by an earlier panel of this court, United
States v. Walker, 149 F.3d 238 (3d Cir. 1998) ("Walker I"),
Cook Supervisor Wadeck, who was assaulted by the
appellant Walker, neither was, nor is a Corrections Officer.1

In reaching this decision, the majority displays, as Justice Frankfurter stated, "ignor[ance] as judges of what we know as men." Watts v. State of Indiana, 388 U.S. 49, 52 (1949). It has set aside its understanding of the most basic and fundamental aspect of prison life: that prisons are essentially composed of two distinct groups of individuals -- those who are imprisoned and those who are charged with guarding the prisoners. Clearly, Walker is a prisoner. Just as clearly, Wadeck -- whose primary responsibility as a Cook Supervisor is to supervise prisoners in preparing food and to ensure that the inmates are fed -- also has a simultaneous secondary responsibility to guard the prisoners.

This latter responsibility, whether discharged by a Cook Supervisor, a prison engineer, a prison maintenance or equipment manager, or others who have prime responsibilities, requires these prison personnel to prevent prisoner escapes, and to prevent violations of prison rules, just as it requires them to perform all and every function entailed in guarding the prison population. Hence, Wadeck, as a Cook Supervisor, simultaneously bears not only the responsibility to ensure that the inmates are fed, but also bears the ongoing and continuous responsibility to guard

_____

1. In Walker I, for purposes of S 3A1.2(b) of the United States Sentencing Guidelines, we defined "corrections officer" as "any person so titled, any person, however, titled, who spends significant time guarding prisoners within a jail or correctional institution or in transit to or from or within a jail or correctional institution, and all other persons assaulted while actually engaged in guarding prisoners."

19

these very prisoners. As such, he must necessarily be regarded as a Corrections Officer. To conclude that Cook Supervisor Wadeck is not a Corrections Officer is, as I have just indicated, to ignore what we know as a matter of common sense, and to construe Wadeck's position without reference to either his overall prison responsibilities or our general knowledge of the way prisons operate.

The district court found that "Wadeck routinely supervises inmates during their employment, is responsible for ensuring that they are present during work hours, and is responsible for safety, security and discipline of inmates under his supervision." United States v. Walker, 30 F. Supp. 2d 829, 833 (M.D. Pa. 1998). Wadeck received specialized training for his position, including training in security and self-defense. Stationed throughout most of the penitentiary are correctional officers to guard the prisoners;

however, -- and this is most significant to me-- no other Corrections Officers styled as such are regularly posted in the kitchen area. Although Corrections Officers gather in the dining hall for security purposes, they are not present in any other part of the kitchen either during or between meals, leaving the maintenance of kitchen security solely to those such as Cook Supervisor Wadeck.2  It is Wadeck and other Cook Supervisors who make sure that the doors and grills are locked, search for contraband, prevent prisoners from escaping, and take action to prevent violations of prison rules. In the past Wadeck himself has responded to emergencies and reported violations.

Cook Supervisors such as Wadeck help monitor and account for the whereabouts of prisoners assigned to their department, and directly supervise prisoners employed in

_____

2. The district court found, for example, that:"Between 11:00 p.m. and 7:00 a.m., there is only one Cook Supervisor on duty to supervise 16 inmates without any other BOP employees, including Corrections Officers, present in the kitchen area." Walker I, 30 F. Supp. 2d at 832 (emphasis added).

The district court also found that: "While Corrections Officers stand main line, they are not stationed in any other part of the kitchen area either during meals or between meals, and security is left to the Food Service Department." Id.

20

the kitchen. And, although Cook Supervisors are not styled Corrections Officers, they wear dark blue uniforms to which are affixed the Bureau of Prisons emblem, wear duty belts, receive specialized training in security matters that are unique to Food Services (such as knowledge of food products that can be utilized in the making of controlled or prohibited substances, such as alcohol), and are responsible for reporting any missing inmates to correctional officers.3 Cook Supervisors are also authorized to pursue, arrest or detain escapees. Indeed, the district court found that Cook Supervisors also qualify for early retirement benefits as a "law enforcement officer" because, in addition to their food-related responsibilities, they share many of the duties of correctional officers. Finally, the district court also based its conclusion on the premise that Walker assaulted Wadeck while Wadeck was engaged in guarding prisoners.4

Walker does not contest the district court's factual findings, but rather only its legal conclusion that those facts were sufficient to establish that Wadeck was a Corrections Officer within the meaning of Walker I. We

"exercise plenary review over legal questions about the meaning of the sentencing guidelines, but apply the deferential clearly erroneous standard to factual determinations underlying their application." United States v. Inigo, 925 F.2d 641, 658 (3d Cir. 1991).

The majority's opinion attempts to tailor the subset of prison employees that qualify as Corrections Officers based on the significance of the amount of time they spend guarding prisoners. In this endeavor, I believe the majority has erroneously and unnecessarily excluded from those

_____

3. Employees specifically entitled "correctional officers" are employed at the penitentiary. But, we have not limited the definition of Corrections Officers, for purposes of the Sentencing Guidelines, to only those so entitled. See United States v. Walker, 149 F.3d 238, 242 (3d Cir. 1998). Our definition also included "any person, . . . however titled, who spends significant time guarding prisoners . . . and all other persons assaulted while actually engaged in guarding prisoners." Id.

4. Just prior to Walker's attack, in his supervisory role Wadeck was directing two prisoner-workers as to the number of food trays he needed prepared.

21

discharging the functions of Corrections Officers all but those who are actually entitled Corrections Officers, and those employees such as lieutenants who instruct others to conduct shakedowns, security officers, locksmith officers, armory officers, senior officers, senior officer specialists, special investigative agents and correctional counselors. (Majority Op. at 13). Wadeck's food preparation activities should not be construed to diminish the significant time he spends in guarding prisoners.

The majority places too much weight on the fact that any prison employee would be expected to respond to inmate fights or emergencies, write up inmates for violations, and make themselves available to prisoners with problems or complaints should the situation arise. Id. at 14. Although it is true that in some manner all employees share the responsibilities of prison security, my colleagues ignore the fact that unlike internal office prison personnel, for example, Corrections Officers including Cook Supervisors are constantly and continuously engaged in these duties. It makes no sense for the majority to discount the importance of the duties required of a Cook Supervisor merely because some other employees might on a rare occasion assume them as well. Nor is this analysis changed by the fact that, as the majority notes, it is cook foremen rather than Cook Supervisors who conduct shakedowns. (Id. at 15). The

majority did not feel the need to eliminate armory officers, locksmith officers, special investigative agents, correctional counselors and others from its list of those who would qualify as Corrections Officers merely because another prison official conducts the shakedowns. Similarly and as a matter of logic, neither should Cook Supervisors fail to qualify as Corrections Officers on this basis.

For the foregoing reasons, I respectfully dissent. As I read the record, Walker I, and the district court's findings of fact, the district court correctly categorized Wadeck as a Corrections Officer, and therefore properly enhanced Walker's sentence to reflect Wadeck's status as an official victim.5

_____

5. The "Official Victim" provision of section 3A1.2 of the United States Sentencing Guidelines provides that:

22

As a second matter, the majority also addresses the issue of whether we should remand this case for resentencing of Walker because the majority charges that the district court failed to make specific findings of fact with respect to Walker's knowledge of Wadeck's status as a Corrections Officer. We must recognize, however, that our mandate to the district court on remand in Walker I was to conduct "further fact-finding and, applying our definition of corrections officer, see if Walker is subject to the section 3A1.2(b) `Official Victim' enhancement [of three levels]." Walker, 149 F.3d at 243. It appears to me that the district court made no point of Walker's knowledge because our earlier opinion (Walker I) itself referred to Walker's admission during his testimony that Wadeck was "a cop." Id. at 242. Indeed, a review of the record reveals this telling admission.6

_____

     If--

     (a) the victim was a government officer or employee; a former government officer or employee; or a member of the immediate family of any of the above, and the offense of conviction was motivated by such status, or

     (b) during the course of the offense or immediateflight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury,

increase by 3 levels. U.S.S.G. S 3A1.2.

6. During the Sentencing, the following exchange occurred between Walker and his counsel:

Q: If Mr. Wadeck had been an inmate and called you a punk, what would you have done

A: I would have tried to kill him.

Q: You didn't try to kill Mr. Wadeck, did you?

A: No, he was a cop.

Sentencing Hearing Transcript at 8.

23

Further, given the uniforms worn by Cook Supervisors, the security measures taken by Cook Supervisors -- including searching for contraband items, checking the security in the kitchen and monitoring prisoners -- Walker had to have been aware that Wadeck was a Corrections Officer, even if not formally titled as such. Certainly, he knew that Wadeck was not a prisoner. Although the district court understandably made no explicit finding with regard to Walker's knowledge, presumably in light of our mandate, I am satisfied that the government's burden as to this requirement was satisfied as well.

I would hold that Wadeck was a Corrections Officer; that Walker knew he was; and that the district court did not err in enhancing Walker's sentence. Because the majority holds otherwise, I respectfully dissent.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

24