**UNITED STATES, Appellee,**

v.

**Inmate Kevin J. FLYNN, United States Disciplinary Barracks, Appellant.**

**ARMY 20000588.**

U.S. Army Court of Criminal Appeals.

21 March 2003.

For Appellant: William E. Cassara; Captain Terri J. Erisman, JA (on brief).

For Appellee: Lieutenant Colonel Denise R. Lind, JA; Major Paul T. Cygnarowicz, JA; Captain Charles C. Choi, JA (on brief).

Before CHAPMAN, Senior Judge, CLEVENGER, and CARTER, Appellate Military Judges.

## OPINION OF THE COURT

CHAPMAN, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of breach of the peace, and assault upon a person in the execution of military law enforcement duties, in violation of Articles 116 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 916 and 928 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to confinement for twenty-one months, but, pursuant to a pretrial agreement, suspended confinement in excess of fifteen months for six months.[1] The case is before this court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

Appellant asserts that the 345–day delay between announcement of sentence and action is unreasonable, thus warranting sentence relief. *See United States v. Collazo*, 53 M.J. 721 (Army Ct.Crim.App.2000). He also maintains that his guilty plea to assault is improvident, because the victim was not a person who had, and was in the execution of, law enforcement duties. Although we find no merit in either argument, appellant's second assignment of error warrants further discussion.

## BACKGROUND

On 1 December 1999, while incarcerated at the United States Disciplinary Barracks (USDB),[2] appellant witnessed an incident between a cook, Staff Sergeant (SSG) D, and Inmate C inside the USDB dining facility. Inmate C became angry after SSG D removed a piece of fish from Inmate C's plate (instead of the two pieces of fish he was authorized, Inmate C had three). Words were exchanged, and Inmate C angrily sat down to eat at a table next to appellant. After Inmate C explained to appellant what had transpired between him and SSG D, appellant told Inmate C that SSG D was a racist and that Inmate C was treated poorly because he was white and SSG D was black. Another cadre member, Sergeant (SGT) L, overheard the inmates' conversation and tried to explain to them that the incident was not racially motivated. Sergeant L then went over to the serving line and told SSG D what he had overheard. Staff Sergeant D,

---

1. The convening authority also credited appellant with ten days of administrative credit against the approved sentence pursuant to Article 13, UCMJ, 10 U.S.C. § 813.

2. Appellant began serving a ten-year sentence to confinement for assaulting and maiming a child on 15 August 1996. He was discharged from the Marine Corps on 5 March 1999. He remains lawfully confined at the USDB.

apparently in a voice loud enough for others to hear, explained to SGT L that he served everyone equally and that it was important to serve only correct portions. Appellant took off his glasses, got up out of his seat, and asked SSG D if he was talking to him. Appellant then jumped over two metal railings separating the serving lines from the main dining area and confronted SSG D. Staff Sergeant D attempted to talk to appellant, but appellant suddenly and without provocation punched SSG D in the mouth with his closed fist. Staff Sergeant D suffered three minor cuts to his lip. After witnessing the assault, a number of inmates got up from their seats and ran to the railing where the assault occurred. A cadre member immediately sounded an alert. Additional personnel arrived quickly at the scene and restored order.

During the providence inquiry, appellant admitted that he had no justification to strike SSG D. He acknowledged that he was not provoked, nor did he feel threatened by SSG D's actions. Appellant stated that, at the time of the incident, he believed SSG D was performing the general law enforcement duties of maintaining custody and control of inmates. He assured the military judge that when he confronted SSG D, he knew that cooks at the USDB had the responsibility to maintain good order and discipline inside the facility. The military judge specifically inquired if appellant felt that SSG D's actions, in any way, departed from the appropriate conduct required of law enforcement personnel under similar circumstances. Appellant replied that he did not.

According to a stipulation of fact agreed to by all parties to the court-martial: (1) all USDB personnel are required to attend a pre-service training course that outlines their duties and responsibilities; (2) "[a]ll military personnel who work in the USDB are considered cadre"; and (3) among other duties, SSG D had the duty to maintain custody and control of inmates within established guidelines, and was authorized to "write-up" inmates for misconduct and/or take an inmate's badge (pending disciplinary action for the misconduct).

During a pretrial Article 39(a), UCMJ, hearing, trial defense counsel moved to dismiss the assault specification and charge. Defense counsel maintained that the evidence would not support a finding that SSG D was acting in a law enforcement capacity at the time of the assault. The military judge denied the motion. Although the record is less than clear, the parties apparently intended, and the military judge accepted, appellant's subsequent conditional guilty plea to the assault charge and its specification. *See* Rule for Courts–Martial 910(a)(2).

## DISCUSSION

We review a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (1996). We will not overturn a military judge's acceptance of a guilty plea unless the record of trial shows a substantial basis in law and fact for questioning the guilty plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991); *see also United States v. Vonn*, 535 U.S. 55, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002).

The government charged appellant, *inter alia*, with an assault upon a person in the execution of military law enforcement duties under part IV, paragraph 54b(3)(b) of the *Manual for Courts–Martial, United States* (2000 ed.) [hereinafter *MCM*]. Understanding the need to protect individuals in the execution of law enforcement duties, the President promulgated the increased punishment provisions of paragraph 54c(3)(b).[3] The maximum imposable punishment for this type of assault is based on the enhanced penalty provisions of 18 U.S.C. §§ 111 and 1114.[4] *See MCM*, app. 23, Analysis of Puni-

---

**3.** The maximum sentence for an assault consummated by a battery is a bad-conduct discharge, forfeiture of all pay and allowances, and confinement for six months. The maximum sentence for an assault upon any person who, in the execution of his or her office, is performing law enforcement duties is a dishonorable discharge, forfeiture of all pay and allowances, and confinement for three years. *MCM*, paras. 54e(2) and (6).

**4.** These sections of the United States Code make it a crime to assault "any officer or employee of the United States or of any agency in any branch

tive Articles, para. 54, at A23–15. The purpose of 18 U.S.C. § 111 is to fulfill Congress's goals of protecting federal officers and facilitating the accomplishment of federal law enforcement functions. *See United States v. Lopez*, 710 F.2d 1071, 1073 (5th Cir.1983). Punishment for violations of such provisions "effectuates prison management and prisoner rehabilitative goals." *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

 To establish an adequate factual basis for acceptance of a guilty plea to such an assault, a military judge must ensure that there exists sufficient evidence that the victim of the assault was a person who then had, and was in the execution of, law enforcement duties. Also, an accused must have known at the time of the assault that the victim then had, and was in the execution of, those duties. Dep't. of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 3–54–6c (1 Apr. 2001)[5]; *see Prater*, 32 M.J. at 436.

 Appellant argues that SSG D, a cook, was not "acting in the capacity of a law enforcement officer" at the time of the assault. We agree with the government, however, that the sentencing enhancing provisions of paragraph 54c(3)(b) do not necessarily depend only upon a victim's status or position. A cook or any other USDB cadre member may have, and be in the execution of, law enforcement duties if such duties are prescribed by statute, regulation, superior orders, or by military custom or usage. *See* Benchbook, para. 3–54–6d.

The parties stipulated that all military personnel who work in the USDB, like SSG D, are cadre, and must attend a pre-service course. United States Disciplinary Barracks' regulations make all cadre members responsible for the control and supervision of inmates. USDB Reg. 190–3, Personnel–General: Rules for Appropriate USDB Staff

Conduct, para. 3–2d(2) (1 Mar. 1999). Also, USDB cadre cannot ignore inmate misconduct. *Id.* at para. 3–2d(4). All personnel must immediately correct and report such misconduct in accordance with established procedures. *Id.* Pre-service training sessions acquaint all USDB personnel with these safety, security, custody, and control duties. Army Regulation 190–47 requires commanders of confinement facilities to "establish and conduct, on a continuing basis, an in-service training program designed to ensure that all personnel assigned duties at the facility are kept fully trained in the custody, control, management, and correctional treatment of all prisoners." Army Reg. 190–47, Military Police: The Army Corrections System, para. 9–10 (15 Aug. 1996). Additionally, USDB Dining Facility Standard Operating Procedures make all dining facility personnel responsible for good order and discipline within the dining area. *See* App. Ex. VIII.

The law enforcement duties and responsibilities outlined above are essential to facilitate the accomplishment of the disciplinary and correctional functions of military confinement facilities. Thus, we conclude that SSG D, like all USDB cooks and other cadre members, had a duty to maintain the security, custody, control, and discipline of all inmates housed within the USDB, pursuant to applicable regulations and standard operating procedures.

Staff Sergeant D's conduct was consistent with his duty to control and enforce discipline within the dining facility.[6] In an attempt to defuse a potentially volatile situation, SSG D tried to explain to appellant and to the other inmates the reasons for his actions involving Inmate C. Instead of listening, appellant, without provocation or excuse, assaulted SSG D.

---

of the United States Government (including any member of the uniformed services)" if the officer or employee is engaged in official duties. 18 U.S.C. § 1114.

**5.** This section of the Benchbook contains the same language that was in effect at the time of appellant's trial.

**6.** Appellant does not allege, nor do we find, any evidence to support a conclusion that SSG D acted in such a manner as to divest himself of his status as a person in the execution of law enforcement duties. *See United States v. King*, 29 M.J. 885 (A.C.M.R.1989).

Whether SSG D had and was in the execution of law enforcement duties is a question of fact for this court to decide. UCMJ art. 66; *United States v. Ginn*, 47 M.J. 236, 242 (1997); *see also United States v. Hoffer*, 869 F.2d 123, 126 (2d Cir.1989). We are satisfied, under the facts of this case, that when assaulted, SSG D was performing a law enforcement act or service required and authorized by regulation and standard operating procedures. *See* Benchbook, para. 3–54–6. Thus, he was in the execution of law enforcement duties. Further, we find that appellant knew at the time of the assault that SSG D had such duties and was in the execution of those duties.

In light of our factual findings above, we hold that the providence inquiry was sufficient to establish appellant's guilt of assault upon a person in the execution of law enforcement duties. There is no substantial basis in law or fact to disturb the guilty pleas. Thus, the military judge did not abuse his discretion by accepting appellant's pleas.

Recognizing the serious consequences that can result from indiscipline within military confinement facilities, this court's decision is consistent with the President's goal of giving greater protection to individuals performing law enforcement functions. Such protection is essential to the efficacy of the mission of our military penal institutions. *See United States v. Feola*, 420 U.S. 671, 684 n. 18, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). All USDB cadre, including cooks, while performing their USDB duties which include providing for the custody, control, and discipline of USDB inmates, should benefit from this protection. *See United States v. Green*, 927 F.2d 1005, 1008 (7th Cir.1991) (holding that "the district court did not err in instructing the jury that the duties of a federal prison employee, even a food service worker, extend to 'safekeeping, protection and discipline.'"); *but see United States v. Walker*, 202 F.3d 181, 190 (3d Cir.2000) (holding that a cook supervisor was not a "corrections officer" for purposes of the sentence enhancing provisions under the U.S. Sentencing Guidelines Manual, § 3A1.2(b)).

As the Supreme Court recognized in *Sandin v. Conner*, "federal courts ought to afford appropriate deference and flexibility to [prison] officials trying to manage a volatile environment." 515 U.S. at 482, 115 S.Ct. 2293. Mindful of that admonition, our decision today reinforces the strict application of penal rules of conduct intended to maintain good order and discipline in the USDB, and to protect its cadre and staff, as well as other inmates. *See United States v. Roth*, 57 M.J. 740, 742 (Army Ct.Crim.App.2002); *United States v. Smith*, 56 M.J. 653, 658–59 (Army Ct.Crim.App.2001).

Accordingly, the findings of guilty and the sentence are affirmed.

Judge CLEVENGER and Judge CARTER concur.